OPINION
{¶ 1} Plaintiffs-Appellants, Cooper Farms, Inc. and V.H. Cooper Company, Inc. (hereinafter referred to as "Cooper Farms" and "V.H. Cooper" respectively and jointly as "Plaintiffs") and Defendant-Appellant, Brown Brown of Ohio, Inc. (hereinafter referred to as "Brown Brown"), (hereinafter Plaintiffs and Brown Brown jointly referred to as "Appellants"), appeal the judgment of the Van Wert County Court of Common Pleas granting partial summary judgment in favor of Defendant-Appellee, Crum 
Forster Specialty Insurance Company, Inc. (hereinafter referred to as "Crum Forster") and Defendant-Appellee, Lexington Insurance Company (hereinafter referred to as "Lexington Insurance"). On appeal, Plaintiffs assert that the trial court erred in denying its motion and granting Crum Forster's motion for partial summary judgment on their breach of contract claim against Crum Forster and that the trial court erred in granting partial summary judgment in favor of Lexington Insurance on their breach of contract claim because the trial court failed to determine which of two possible "schedules" governed the amount of "scheduled loss coverage" Lexington Insurance owed them. Also, on appeal, Brown Brown asserts that the trial court erred in considering parol evidence when it interpreted Crum Forster's insurance policy and that the trial court erred in granting summary judgment in favor of Crum Forster. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} A tornado damaging a turkey farm operation in Van Wert, Ohio, owned and operated by V.H. Cooper (hereinafter referred to as "the Van Wert location"), precipitated this case.[1]
 {¶ 3} Since 1998, Plaintiffs and their related companies have used Brown Brown and its predecessors as their insurance brokers to procure commercial property insurance. Prior to the summer of 2002, Plaintiffs and their related companies had blanket commercial property insurance coverage for their various locations, including the Van Wert location, from the Indiana Insurance Company (hereinafter referred to as "Indiana Insurance").
 {¶ 4} Around May of 2002, Plaintiffs and Brown Brown were informed that Indiana Insurance would not renew its insurance policy, which was set to expire on August 20, 2002. Plaintiffs again had Brown Brown procure a new insurance policy for the 2002-03 policy term on their properties. Brown Brown turned to sub-broker Partners Specialty Group, Inc. (hereinafter referred to as "Partners Specialty") to help procure an insurance policy for Plaintiffs.
 {¶ 5} On August 15, 2002, Partners Specialty received a written quotation from Lexington Insurance to provide $5 million in primary layer coverage, on a scheduled basis only, for Plaintiffs' property. On the same day, Brown Brown held a meeting with Plaintiffs' representatives and presented them a prepared proposal entitled "Cooper Farms, Inc. — 2002 Insurance Proposal." In that proposal, the names of the insureds included "V.H. Cooper, Inc." and "Cooper Farms, Inc." and provided that Lexington Insurance offered "No Blanket Insurance — Scheduled Locations Only."
 {¶ 6} On August 20, 2002, Partners Specialty faxed a quotation to Brown Brown for "[Cooper Farms'] locations other than [its] main processing plant."[2] Partners Specialty's quotation indicated that the "Insured" was "Cooper Farms";[3] that the "Policy Period" was from "8/21/02 to 8/21/03"; that the "Insurers" were "Lexington Insurance Company — Non-Admitted — Primary" and "Crum Forster Specialty Insurance Company — Non-Admitted — Excess"; that the "Limits" were "$10,000,000 loss limit per occurrence — Per the revised schedule of values submitted on 8/20/02"; that the "Deductible" was "$100,000 per occurrence all perils except: [a flood deductible]"; that the "Limits shown are Scheduled, NOT BLANKET"; and, that the "COVERAGE IS NOT BOUND [and] [i]n order to bind the coverage a request must be received in writing." The "revised schedule of values submitted on 8/20/02" had three insured properties for the Van Wert location. These insured properties included a poultry processing and distribution warehouse valued at $4,845,390 and two dry package and storage facilities, one valued at $807,830 and the other at $914,042, for a total value of $6,567,262.
 {¶ 7} Thereafter, Brown Brown accepted Partners Specialty's offer and Partners Specialty sent Brown Brown a faxed confirmation on August 20, 2002. Also, on or about August 20, 2002, Brown Brown issued two binders to Cooper Farms. These two binders were numbered 1984 and 1985.
 {¶ 8} Binder number 1984 named Cooper Farms as the insured and Lexington Insurance as the insurance company. The binder provided that Cooper Farms would have specialty and replacement cost insurance on the "locations on file" with a $100,000 deductible and a $5 million limit. Binder number 1984 also specified, under a section termed "special conditions/other coverages", "Primary property limit on all locations per statement of values except for St. Henry location."
 {¶ 9} Binder number 1985 named Cooper Farms as the insured and Crum Forster as the insurance company. The binder provided that Cooper Farms would have specialty insurance and replacement cost in "excess limits over Lex" for an amount of $5 million. The binder also provided, under a section termed "Special conditions/other coverages", "per statement of values, excluding St. Henry location."
 {¶ 10} On or about August 21, 2002, Crum Forster sent Partners Specialty a document entitled "Binding Acknowledgment" indicating that it was bound under policy number "PX000017", which was effective "8/21/02-03." Additionally, the document indicated that the limit of the policy was "5,000,000 x/s $5,000,000" with a deductible "per primary."
 {¶ 11} Also, on August 21, 2002, Lexington Insurance faxed Partners Specialty a "Confirmation of Binder" indicating that it was bound under policy number "8751461", which was effective on August 21, 2002 and expired on August 21, 2003. Additionally, the confirmation stated that the amount of insurance was "$5,000,000. PRIMARY PER OCCURRENCE * * *." (Emphasis in original).
 {¶ 12} On August 22, 2002, Partners Specialty faxed Brown 
Brown "Binder #3232", wherein Partners Specialty provided that "[i]n accordance with your instructions, we have effected insurance as follows." Binder #3232 indicated that Cooper Farms as the insured with Brown Brown as the producer and listed the addresses for both. Binder #3232 also indicated, below the names of the insured and producer, that the "Binder Period" would run from "8/21/02 to 11/21/02 12:01 AM Standard Time at above location(s)" and that the "Policy Period" would run from "8/21/02 to 8/21/03 12:01 AM Standard Time at above location(s)." Binder #3232 also noted that the insurers were Lexington Insurance under policy number "8751461" and Crum Forster under policy number "PX000017." Binder #3232 further indicated that the limits on the insurance would be "$10,000,000 loss limit per occurrence — Per the revised schedule of values submitted on 8/20/02" and that the deductible would be $100,000 per occurrence. Binder #3232 also indicated that it was subject to the "Receipt of Signed Revised Statement of Values within 20 Days of Binding" and, within a section titled "Notes", that the "Limits shown are Scheduled, NOT BLANKET." (Emphasis in original). Also, Binder #3232 indicated that it was issued on August 21, 2002 and was signed by Valerie Brands of Partners Specialty. Finally, under a section titled "CONDITIONS", Binder #3232 indicated that "This binder will be terminated and superseded upon delivery of formal policy(ies) or certificates issued to replace it."
 {¶ 13} On October 10, 2002, Brown Brown met with Plaintiffs to discuss the values of the properties at the Van Wert location. At this meeting, Plaintiffs felt the value of the Van Wert location needed to be increased to a total value of $12 million from the original $6.5 million, as was provided in the August 20, 2002 restatement of values. Also, at this meeting, Brown Brown and Cooper Farms decided that they were going to attempt to increase the limits of the policy by line item without having to change the loss limit on the policy or having to purchase an additional layer of coverage. On or about October 21, 2002, Plaintiffs submitted to Brown Brown a "Revised S[tatement] O[f] V[alues]" which reflected the aforementioned revisions to the values at the Van Wert location.
 {¶ 14} However, before the values could be updated, on November 10, 2002, a tornado destroyed much if not all of the Van Wert location, causing over $10 million in damage.
 {¶ 15} A few days after the tornado, Lexington Insurance's and Crum Forster's formal insurance policies that covered the damage caused by the tornado were issued and delivered to Plaintiffs.
 {¶ 16} Subsequently, Lexington Insurance paid $5 million, under its primary policy, and Crum Forster paid $1,567,262, under its excess policy, to Plaintiffs to cover the losses sustained at the Van Wert location. Also, Lexington Insurance and Crum Forster claimed that these amounts represented the exhaustion of the policy limits that Brown Brown had procured for the Van Wert location.
 {¶ 17} Thereafter, Plaintiffs sued Brown Brown, Lexington Insurance, and Crum Forster alleging seven claims for relief. Specifically, Plantiffs claimed that Brown Brown breached its agreement by failing to adequately advise them and by failing to procure and maintain full insurance protection at the Van Wert location; that Brown Brown breached its fiduciary duty as their agent; and, that Brown Brown negligently misrepresented and/or concealed from them material information regarding the insurance in question.
 {¶ 18} Also, Plaintiffs claimed that Lexington Insurance breached its contract with them by failing to provide them with indemnity insurance coverage on a blanket basis with $5 million in coverage, by failing to timely investigate, process, and adjust their claim, and to make full payments on their claim within a reasonable period of time. Plaintiffs further claimed that Lexington Insurance failed to pay them the contracted amount of insurance coverage within a reasonable period of time, without reasonable justification, in bad faith, and in a willful and wanton manner.
 {¶ 19} Finally, Plaintiffs claimed that Crum Forster breached its contract with them by failing to provide them with indemnity insurance coverage on a blanket basis with $5 million in coverage, by failing to timely investigate, process, and adjust their claim, and to make full payments on their claim within a reasonable period of time. Plaintiffs further claimed that Crum Forster failed to pay them the contracted amount of insurance coverage within a reasonable period of time, without reasonable justification, in bad faith, and in a willful and wanton manner.
 {¶ 20} In December of 2004, Brown Brown filed an answer to Plaintiffs' amended complaint and a cross-claim against Crum 
Forster. In its filing, Brown Brown denied all of Plaintiffs' claims against it and cross-claimed for a declaratory judgment that Crum Forster's insurance policy on the Van Wert location provided Plaintiffs with "blanket" coverage rather than "scheduled" coverage.
 {¶ 21} In February of 2005, Lexington Insurance and Crum 
Forster moved to bifurcate and stay Plaintiffs' bad faith claims against them, which the trial court granted in April of 2005.
 {¶ 22} In June of 2005, Brown Brown moved for summary judgment on its cross-claim for declaratory judgment against Crum Forster, alleging that Crum Forster issued a $5 million "blanket" coverage policy in excess of the $5 million in primary coverage Lexington Insurance provided.
 {¶ 23} In July of 2005, Plaintiffs filed a motion for partial summary judgment against Crum Forster and to join Brown 
Brown's motion for summary judgment on its declaratory judgment claim against Crum Forster.
 {¶ 24} In September of 2005, Crum Forster moved for summary judgment against Plaintiffs and Brown Brown. Additionally, Lexington Insurance moved for summary judgment against Plaintiffs. In their motions, Crum Forster and Lexington Insurance argued that Cooper Farms did not have an insurable interest on the Van Wert location and that V.H. Cooper was not a named insured and therefore was not entitled to recover under the insurance policies. Also, in its motion, Crum Forster asserted that Brown Brown lacked standing to bring a declaratory judgment action on the insurance policy and that it had already paid the maximum amount that could be due pursuant to its insurance agreement with Plaintiffs. Also, in its motion, Lexington Insurance moved for summary judgment because Plaintiffs were not entitled any further relief under Lexington Insurance's insurance policy.
 {¶ 25} In November of 2005, the trial court held a hearing on the motions for summary judgment and in December of 2005, the trial court issued its ruling. In its judgment entry, the trial court found that Lexington Insurance and Crum Forster's motions for summary judgment (based on the argument that Cooper Farms did not have an insurable interest on the Van Wert location and that V.H. Cooper was not a named insured and therefore Plaintiffs were not entitled to recover under the insurance policies) not well taken and overruled them. The trial court also granted summary judgment in favor of Lexington Insurance with respect to Plaintiffs' breach of contract claim and found that Lexington Insurance's insurance policy with Plaintiffs was a "scheduled" policy and granted summary judgment to Lexington Insurance on that issue. The trial court further found that Brown Brown did have standing to bring a declaratory judgment action on Crum 
Forster's insurance policy and that "[Crum Forster's] insurance agreement between [it] and Plaintiffs provided `scheduled' loss limit coverage with limits per location based upon [Cooper Farms'] Revised Statement of Values dated August 20, 2002." (Dec. 19, 2005 Judgment Entry p. 14). Additionally, the trial court granted summary judgment in favor of Crum Forster on Plaintiffs' breach of contract claim against it, finding that Plaintiffs' total loss limit for the Van Wert location was $6,567,262 and that Crum Forster provided its limit of liability for loss of $1,567,262. Further, the trial court dismissed the remainder of Brown Brown's cross-claim against Crum Forster. Finally, the trial court made an express determination that there was no just reason for delay under Civ.R. 54(B).
 {¶ 26} It is from this judgment that Plaintiffs and Brown 
Brown appeal.[4] For purposes of clarity, Brown Brown's assignments of error will be addressed first, followed by Plaintiffs' assignments of error.
 I. Brown Brown's Appeal Assignment of Error No. I THE TRIAL COURT ERRED BY CONSIDERING PAROL EVIDENCE WHENINTERPRETING THE UNAMBIGUOUS INSURANCE POLICY ISSUED BY CRUM FORSTER AS REFLECTED IN THE SUMMARY JUDGMENT MATERIALS FILED BYBROWN AND THE CROSS-MOTION FOR SUMMARY JUDGMENT MATERIALS FILEDBY CRUM FORSTER.
 Assignment of Error No. II IF ANY AMBIGUITY EXISTED IN THE INSURANCE CONTRACT, THE TRIALCOURT ERRED BY ENTERING SUMMARY JUDGMENT IN FAVOR OF CRUM FORSTER BECAUSE THERE IS A QUESTION OF FACT AS TO THE INTENT OFTHE PARTIES, THEREBY PRECLUDING THE ENTRY OF SUMMARY JUDGMENT INFAVOR OF CRUM FORSTER AS REFLECTED IN THE SUMMARY JUDGMENTMATERIALS FILED BY BROWN AND THE CROSS-MOTION FOR SUMMARYJUDGMENT MATERIALS FILED BY CRUM FORSTER.
 Standard of Review {¶ 27} An appellate court reviews a summary judgment order de novo. Wampler v. Higgins, 93 Ohio St.3d 111, 127,2001-Ohio-1293; Hillyer v. State Farm Mut. Auto. Ins. Co.
(1999), 131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. DaytonHeidelberg Distrib. Co., 148 Ohio App.3d 596, 2002-Ohio-3932, at ¶ 25, citing State ex rel. Cassels v. Dayton City School Dist.Bd. of Edn., 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to be one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); Horton v.Harwick Chem. Corp., 73 Ohio St.3d 679, 686-87, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356,358-59, 1992-Ohio-95.
 {¶ 28} The party moving for summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. Stateex rel. Burnes v. Athens City Clerk of Courts,83 Ohio St.3d 523, 524, 1998-Ohio-3; see, also, Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 Assignments of Error Nos. I II {¶ 29} In its first assignment of error, Brown Brown asserts that the trial court erred in considering parol evidence when interpreting Crum Forster's insurance policy. Specifically, Brown Brown asserts that the plain and unambiguous language in Crum Forster's insurance policy provided $5 million in excess coverage without limitation, and therefore, the trial court should have never considered parol evidence to interpret the insurance policy and should have granted summary judgment in its favor. In its second assignment of error, Brown Brown asserts that if this Court finds an ambiguity in Crum Forster's insurance policy, that the trial court erred in entering summary judgment in favor of Crum 
Forster because there was a question of fact as to the intent of the parties. Due to the nature of these assignments of error, we will address them together.
 {¶ 30} In its entry, the trial court focuses on Crum 
Forster's insurance policy to determine what coverage it provided to Plaintiffs for the losses sustained at the Van Wert location. After determining that Crum Forster's insurance policy was ambiguous, the trial court considered parol or extrinsic evidence to show the intent of the parties when the contract was made. Thereafter, the trial court found, as a matter of law, that Crum Forster's insurance policy "provided `scheduled' loss limit coverage with limits per location based upon [Cooper Farms'] Revised Statement of Values dated August 20, 2002" and granted summary judgment in favor of Crum Forster.
 {¶ 31} However, it is undisputed that Crum Forster's formal insurance policy was not issued or delivered to Plaintiffs until after the tornado hit the Van Wert location. Therefore, this case is unique because, unlike most insurance coverage disputes, the terms of the formal policy of insurance are not at issue, because the formal policy was issued after the tornado hit the Van Wert location. Accordingly, it would be inappropriate to look at the terms of a policy that was not issued when the alleged triggering event for coverage, the tornado hitting the Van Wert location, occurred. Thus, we must focus on Crum Forster's binder which was issued prior to the tornado.
 {¶ 32} "A binder is a temporary policy of insurance that is effective until the issuance of a formal policy." Midland Ent.,Inc. v. St. Paul Fire Marine Ins. Co. (2000),139 Ohio App.3d 650, 654 citing Clements v. Ohio State Life Ins. Co. (1986),33 Ohio App.3d 80, 85. Therefore, we must review Crum Forster's binder as though it was a formal insurance policy in order to determine what type of coverage was intended.
 {¶ 33} "It is well settled that the construction of written contracts, including contracts of insurance, is a matter of law.Alexander v. Buckeye Pipeline (Sic.) Co. (1978),53 Ohio St.2d 241, at paragraph one of the syllabus; Leber v. Smith,70 Ohio St.3d 548, 553, 1994-Ohio-361 (citation omitted). Accordingly, interpretations of insurance contracts are likewise subject to a de novo standard of review. Nationwide Mut. FireIns. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107, 108,1995-Ohio-214. In so doing `[c]ommon words * * * will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.' Alexander,53 Ohio St.2d 241, at paragraph two of the syllabus." Bunosky v. Metro.Property Cas. Ins. Co., 11th Dist. No. 2005-P-0073,2006-Ohio-2768, at ¶ 12. (Parallel citations omitted.)
 {¶ 34} "[W]here the provisions of an insurance policy are clear and unambiguous courts may not indulge themselves in enlarging the contract by implication in order to embrace an object distinct from that contemplated by the parties, Stickelv. Excess Ins. Co. (1939), 136 Ohio St. 49, paragraph one of the syllabus, nor read into the contract a meaning not placed there by an act of the parties, Motorists Ins. Co. v. Tomanski
(1970), 27 Ohio St.2d 222, 226; Olmstead v. Lumbermens Mutl.Ins. Co. (1970), 22 Ohio St.2d 212, 216, nor make a new contract for the parties where their unequivocal acts demonstrate an intention to the contrary, Jackson v. Metropolitan Life Ins.Co. (1973), 34 Ohio St.2d 138, 140; Fidelity Cas. Co. v.Hartzell Bros. Co. (1924), 109 Ohio St. 566." Gomolka v. StateAuto. Mutl. Ins. Co. (1982), 70 Ohio St.2d 166, 168.
 {¶ 35} "Where, however, it may reasonably be concluded that the language of a policy is ambiguous and may therefore be subject to different interpretations, a universally applied axiom of construction becomes appropriate to resolve the ambiguity. As stated in Butche v. Ohio Cas. Ins. Co. (1962),174 Ohio St. 144, 146: `[P]olicies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretations, will be construed most favorably for the insured.'" Gomolka, 70 Ohio St.2d at 168 (citations omitted).
 {¶ 36} As noted above, Partners Specialty faxed Brown Brown "Binder #3232", wherein Partners Specialty provided that "[i]n accordance with your instructions, we have effected insurance as follows." Binder #3232 indicated that Cooper Farms as the insured with Brown Brown as the producer and listed the addresses for both. Binder #3232 also indicated, below the names of the insured and producer, that the "Binder Period" would run from "8/21/02 to 11/21/02 12:01 AM Standard Time at above location(s)" and that the "Policy Period" would run from "8/21/02 to 8/21/03 12:01 AM Standard Time at above location(s)." Binder #3232 also noted that the insurers were Lexington Insurance under policy number "8751461" and Crum Forster under policy number "PX000017." Binder #3232 further indicated that the limits on the insurance would be "$10,000,000 loss limit per occurrence — Per the revised schedule of values submitted on 8/20/02" and that the deductible would be $100,000 per occurrence. Binder #3232 also indicated that it was subject to the "Receipt of Signed Revised Statement of Values within 20 Days of Binding" and, within a section titled "Notes", that the "Limits shown are Scheduled, NOT BLANKET." (Emphasis in original). Also, Binder #3232 indicated that it was issued on August 21, 2002 and was signed by Valerie Brands of Partners Specialty. Finally, under a section titled "CONDITIONS", Binder #3232 indicated that "This binder will be terminated and superseded upon delivery of formal policy(ies) or certificates issued to replace it."
 {¶ 37} Also, Crum Forster sent Partners Specialty a document entitled "BINDING ACKNOWLEDGEMENT" indicating that it was bound under policy number "PX000017", which was effective "8/21/02-03." Additionally, the document indicated that the "limit" of the policy was "5,000,000 x/s $5,000,000" with a deductible "per primary."
 {¶ 38} First, we find Binder #3232 is unambiguous regarding the period in which it was enforceable. Binder #3232 clearly states that the "Binder Period" would run from "8/21/02 to 11/21/02 12:01 AM Standard Time at above location(s)" and would be "terminated and superseded upon delivery of formal policy(ies) or certificates issued to replace it." Since it is undisputed that the tornado hit the Van Wert location during the "Binder Period" and that Lexington Insurance and Crum Forster did not deliver their formal policies until after the tornado hit, we find that Binder #3232 is enforceable against the parties.
 {¶ 39} Second, we find that Binder #3232 is unambiguous regarding the limits on the insurance Lexington Insurance and Crum Forster were to provide Plaintiffs. Binder #3232 provides that the "limits" were "$10,000,000 loss limit per occurrence — Per the revised schedule of values submitted on 8/20/02." Also, within a section titled "Notes", Binder #3232 provided that the "Limits shown are Scheduled, NOT BLANKET." (Emphasis in original). Thus, we find that under Binder #3232, Lexington Insurance and Crum Forster provided Plaintiffs with "scheduled" insurance coverage based upon the revised schedule of values submitted on August 20, 2002.
 {¶ 40} Third, it is undisputed that Crum Forster was to provide an "excess" insurance policy for $5 million, which is confirmed in Crum Forster's "BINDING ACKNOWLEDGEMENT" wherein Crum Forster indicated that its "limit" under policy PX000017 would be "$5,000,000 x/s $5,000,000." Reading this document in conjunction with Binder #3232, it is unambiguous that Crum 
Forster was to provide excess coverage.
 {¶ 41} Therefore, we find, as a matter of law, that under Binder #3232, Crum Forster provided a scheduled $5 million excess insurance policy that was effective at the time the tornado hit Plaintiffs' Van Wert location. Thus, when Crum 
Forster paid $1,567,262 to cover the losses sustained at the Van Wert location, under its excess policy, it paid the maximum amount it was required to pay, under the revised statement of values submitted on August 20, 2002, which valued the Van Wert location at $6,567,262.
 {¶ 42} Accordingly, albeit for different reasons than those set forth by the trial court, we find that the trial court did not err when it granted summary judgment in favor of Crum 
Forster and against Brown Brown. Therefore, Brown Brown's first and second assignments of error are overruled.
 II. Plaintiffs' Appeal Assignment of Error No. I THE TRIAL COURT ERRED IN DENYING COOPER FARMS' MOTION FORPARTIAL SUMMARY JUDGMENT ON THE BREACH OF CONTRACT CLAIM BECAUSE,AS A MATTER OF LAW, THE CRUM FORSTER INSURANCE POLICY CLEARLYAND UNAMBIGUOUSLY PROVIDED $5 MILLION IN EXCESS INSURANCECOVERAGE. (JUDGMENT ENTRY, 12/19/05.)
 Assignment of Error No. II THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT INFAVOR OF CRUM FORSTER ON THE BREACH OF CONTRACT CLAIM BECAUSE,ONCE A CONTRACT IS FOUND TO BE "AMBIGUOUS AND SUSCEPTIBLE OF MORETHAN ONE INTERPRETATION," THE MEANING OF THE CONTRACT BECOMES AQUESTION OF FACT TO BE DETERMINED BY THE TRIER OF FACT. (JUDGMENTENTRY, 12/19/05).
 Assignment of Error No. III THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT INFAVOR OF LEXINGTON ON THE BREACH OF CONTRACT CLAIM BECAUSE, AFTEREXAMINING PAROL EVIDENCE, THE TRIAL COURT FAILED TO DETERMINEWHICH OF TWO POSSIBLE "SCHEDULES" GOVERNED THE AMOUNT OF"SCHEDULED LOSS COVERAGE" OWED BY LEXINGTON TO COOPER FARMS.(JUDGMENT ENTRY, 12/19/05).
 Assignments of Error Nos. I, II, III {¶ 43} In their first assignment of error, Plaintiffs argue that the trial court erred as a matter of law in finding that Crum Forster's insurance policy was ambiguous. Specifically, Plaintiffs assert that Crum Forster's insurance policy was unambiguous; therefore, the trial court erred in considering parol or extrinsic evidence to determine the type and amount of coverage that was available under Crum Forster's excess insurance policy. In their second assignment of error, Plaintiffs argue that if the amount and coverage provided under Crum 
Forster's insurance policy was ambiguous, the trial court erred in granting summary judgment in favor of Crum Forster. Specifically, Plaintiffs assert that if the trial court was correct in determining that Crum Forster's insurance policy was ambiguous as to the type and amount of coverage, the trial court should have denied Crum Forster's motion for summary judgment, because the resolution of the ambiguity is a question of fact, which the jury should have resolved. In their third assignment of error, Plaintiffs argue that the trial court erred when it failed to determine whether the October 21, 2002 revised schedule of values or the August 20, 2002 revised schedule of values applied to Lexington Insurance's insurance policy.
 {¶ 44} Based on our resolution of Brown Brown's first and second assignments of error, Plantiffs' first, second, and third assignments of error are overruled.
 Crum Forster's Cross-Assignment of Error No. I Because Brown Brown, the insurance broker for Cooper Farms,Inc., was not a party to any insurance agreement between itsclient and Crum Forster, it clearly had no standing tocross-claim for declaratory judgment on the Crum Forsterpolicy, and the Trial Court should have so ruled.
 Crum Forster's Cross-Assignment of Error No. II As Cooper Farms, Inc., the only named insured on the Crum Forster policy, did not sustain a loss from the tornado, theTrial Court should have granted summary judgment on this basis inaddition to those set forth in the Court's written opinion ofDecember 19, 2005.
 Lexington Insurance's Cross-Assignment of Error As Cooper Farms, Inc., the only named insured on the LexingtonPolicy, did not sustain a loss from the tornado, the Trial Courtcould have granted summary judgment on this basis in addition tothose set forth in the Court's written opinion of December 19,2005.
 Crum Forster's Cross-Assignments of Error Nos. I II Lexington Insurance's Cross-Assignment of Error {¶ 45} We may consider an appellee's cross-assignment of error "only when necessary to prevent a reversal of the judgment under review." Parton v. Weilnau (1959), 169 Ohio St. 145, paragraph seven of the syllabus. Since we find Plaintiffs' and Brown Brown's assignments of error lack merit, Crum Forster's and Lexington Insurance's cross-assignments of error are not necessary to prevent a reversal. Therefore, Crum Forster's and Lexington Insurance's cross-assignments of error are moot. App.R. 12(A)(1)(c).
 {¶ 46} Having found no error prejudicial to the appellants herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments Affirmed.
 Bryant, P.J., and Shaw, J., concur.
[1] Cooper Farms is a d/b/a for a closely held family corporation, which includes a number of corporate entities. V.H. Cooper is owned by Cooper Hatchery, Inc., a parent corporation for a number of Cooper Farms' entities.
[2] It is undisputed that the Van Wert location was included within this description.
[3] This is not short form for "Cooper Farms, Inc."
[4] We note that Plaintiffs' appeal was docketed as App. No. 15-06-03 and Brown Brown's appeal was docketed as App. No. 15-06-02. In January of 2006, this Court noted that the appeals were mistakenly filed and docketed by the Clerk of Courts as separate cases and ordered, under App.R. 3(B), that the appeals be consolidated.