OPINION
{¶ 1} Appellant Associated Visual Communications, Inc. ("AVC") appeals the decision of the Stark County Court of Common Pleas that denied its motion for partial summary judgment and granted motions for summary judgment filed by Appellee Erie Insurance Exchange ("Erie") and Appellee Lyons Insurance Agency, Inc. ("Lyons"). The following facts give rise to this appeal.
 {¶ 2} Since approximately 1993, AVC has been in the printing/silk screening business. AVC owns several properties including those located at 236 Walnut Avenue, NE, Canton; 206 Cherry Avenue, Canton; 1251 Harrison Avenue, Canton; and 1253 Harrison Avenue, Canton. At the time AVC purchased the property at 236 Walnut Avenue, it consisted of a two-story brick building and an 80 foot by 80 foot metal building attached to the back of the brick building.
 {¶ 3} In the years 2000 and 2001, AVC insured the properties under commercial policies of insurance with Farmers Insurance Company. Glenn Silverhart, the insurance agent for AVC, procured these policies of insurance. During the 2000-2001 policy *Page 2 
period, the coverage limit of the business personal property and personal property of others at 236 Walnut Avenue was $55,000, which was increased during the 2001-2002 policy period to $57,200. AVC experienced two large losses totaling in excess of $300,000 during the 2001-2002 policy period. As a result, Farmers Insurance Company refused to renew AVC's insurance.
 {¶ 4} In an effort to obtain replacement commercial insurance coverage, Glenn Silverhart contacted Gordon Lyons at Lyons Insurance Agency, Inc. Silverhart submitted an application for insurance, to Lyons, which specifically identified four locations which AVC desired to have insured as well as the amount of coverage desired for each location. In particular, Silverhart noted that the coverage limit for the business personal property at 236 Walnut Avenue was to be approximately $75,000.
 {¶ 5} Thereafter, the parties held a meeting at which Lyons submitted for review an application for insurance which it prepared based upon the application for insurance that Silverhart previously prepared and submitted on behalf of AVC. The application for insurance submitted by Lyons provided a coverage limit of $75,000 for business personal property and personal property of others at 236 Walnut Avenue. Ray Gonzalez, the President of AVC, reviewed and signed the second application of insurance.
 {¶ 6} After submitting the application for insurance to Erie, Erie issued AVC the commercial policy of insurance, Policy No. Q44 0350363 K, effective August 3, 2002 to August 3, 2003. Subsequently, when Erie issued the renewal policy of insurance to AVC, the renewal policy identified the coverage limit of $75,000 for the business personal property and personal property of others at 236 Walnut Avenue. During the *Page 4 
renewal policy period, AVC made several changes to the coverages in the policy, including changing what AVC perceived as mistakes concerning insurance coverage related to the Harrison Avenue properties. AVC requested no changes to the property located at 236 Walnut Avenue.
 {¶ 7} On May 29, 2004, a fire occurred at the property located at 236 Walnut Avenue. The fire destroyed or damaged much of the business personal property at this location. Only weeks prior to the fire, AVC moved at least $200,000 of business personal property and/or personal property of others from the 206 Cherry Avenue location to the 236 Walnut Avenue location. However, AVC did not inform Lyons that such personal property had been moved and did not request to increase the coverage limit for the business personal property at 236 Walnut Avenue.
 {¶ 8} AVC assumed, prior to the fire loss, that any business personal property and personal property of others contained in the metal building at 236 Walnut Avenue would be covered under the coverage limits applicable to 206 Cherry Avenue. AVC based this belief upon the fact that the "Renewal Declarations" and "Supplemental Declarations" of the policy specifically listed the property at 206 Cherry Avenue as "Location 2, Building 1," which described the "occupancy/operations" as "Printing-Warehouse/Storage," with a policy limit of $3,075,000.
 {¶ 9} Thus, AVC believed that because the metal building at 236 Walnut Avenue, described as "Location 1, Building 1," was used as a warehouse and the supplemental declarations for 236 Walnut Avenue described the "occupancy/operations" as "Printing/Silk Screening," the warehouse at 236 Walnut Avenue would be included in the coverage provided for the property located at 206 *Page 5 
Cherry Avenue because this coverage indicated that it applied to warehouses. AVC further believed the $75,000 policy limit applied only to the brick building located at 236 Walnut Avenue.
 {¶ 10} On March 14, 2005, AVC filed suit against Erie as a result of the fire. AVC alleged that Erie breached the insurance contract because it refused to pay additional income protection up to the amount of coverage listed in the Declaration page of the policy, which was $500,000. AVC also alleged a negligence claim against Gordon Lyons because he failed to obtain an appropriate amount of coverage [in excess of $75,000] for its business personal property and for personal property of others at 236 Walnut Avenue.
 {¶ 11} In October 2005, AVC moved to amend its complaint. The trial court granted AVC leave to do so. AVC filed its first amended complaint on November 17, 2005. In this complaint, AVC alleged the fire occurred "at the Rex Avenue NE location" rather than 236 Walnut Avenue. AVC also alleged its losses at the Rex Avenue location were "subject to the limit of coverage of $3,075,000 for business personal property and $850,000 for loss of income" rather than the amounts of coverage stated in the original complaint for the 236 Walnut Avenue property.
 {¶ 12} Subsequently, the parties moved for summary judgment. AVC sought partial summary judgment on November 23, 2005. Erie and Lyons sought summary judgment on December 1, 2005. Thereafter, on March 22, 2006, the trial court granted Erie's and Lyon's motions for summary judgment. The trial court denied AVC's partial motion for summary judgment. AVC timely filed a notice of appeal and sets forth the following assignments of error for our consideration: *Page 6 
 {¶ 13} "I. THE TRIAL COURT ERRED BY FINDING THAT THE PLAIN AND ORDINARY MEANING OF THE LANGUAGE IN THE DEFENDANT ERIE'S INSURANCE POLICY PROVIDED CONTENTS COVERAGE FOR THE PLAINTIFF'S WAREHOUSE ON SUPPLEMENTAL DECLARATION LOCATION 1, WHEN THE ONLY REFERENCE TO WAREHOUSE WAS ON SUPPLEMENTAL DECLARATION LOCATION 2, THE PLAINTIFF'S APPLICATION FOR SUCH INSURANCE HAD DESCRIBED COVERAGE FOR THE WAREHOUSE AS PART OF LOCATION 2, AND IT WAS UNDISPUTED THAT THE PLAINTIFF HAD INTENDED TO INSURE THE WAREHOUSE AND ITS CONTENTS.
 {¶ 14} "II. THE TRIAL COURT ERRED BY FINDING THAT THE PLAINTIFF'S CLAIM FOR LOSS OF BUSINESS INCOME ALSO MUST FAIL BECAUSE THE PLAINTIFF'S CLAIM FOR CONTENTS COVERAGE WAS FOUND BY THE TRIAL COURT TO BE WITHOUT MERIT, AS THE PLAINTIFF'S BUSINESS WAS `INTERRUPTED' WITHIN THE POLICY DEFINITION AND SUCH `INTERRUPTION' CONTINUED WHEN THE PLAINTIFF COULD NOT REPLACE THE COVERED PROPERTY DUE TO DEFENDANT ERIE'S FAILURE TO PAY THE FULL VALUE OF THE CONTENTS CLAIM.
 {¶ 15} "III. THE TRIAL COURT ERRED BY FINDING THAT THE PLAINTIFF SHOULD HAVE PRESENTED EXPERT TESTIMONY TO ESTABLISH THE STANDARD OF CARE FOR ITS INSURANCE AGENT (LYONS), WHEN THE PLAINTIFF'S CLAIM AGAINST LYONS WAS THAT IT DID NOT PROCURE THE AMOUNT OF CONTENTS COVERAGE FOR THE WAREHOUSE REQUESTED BY PLAINTIFF AND THE PARTIES EACH ACKNOWLEDGED IN THEIR BRIEFS IN THE *Page 7 
TRIAL COURT THAT AN INSURANCE AGENT HAS THE DUTY TO USE ORDINARY CARE TO PROCURE THE COVERAGE REQUESTED BY THE INSURED.
 {¶ 16} "IV. THE TRIAL COURT ERRED BY DENYING THE MOTION FOR PARTIAL SUMMARY JUDGMENT OF THE PLAINTIFF WHICH REQUESTED THAT THE TRIAL COURT FIND THAT THE ERIE INSURANCE POLICY WAS ON ITS FACE AMBIGUOUS CONCERNING THE COVERAGE LIMIT APPLICABLE TO THE WAREHOUSE CONTENTS AND THAT THE HIGHER LIMIT PROVIDED BY THE PLAINTIFF'S INTERPRETATION IS APPLICABLE BECAUSE THE AMBIGUITY MUST BE RESOLVED IN FAVOR OF THE INSURED."
 Summary Judgment Standard {¶ 17} Our standard of review is de novo, and as an appellate court, we must stand in the shoes of the trial court and review summary judgment on the same standard and evidence as the trial court.Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35. Accordingly, an appellate court must independently review the record to determine whether summary judgment was appropriate, and we need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711; Morehead v. Conley (1991), 75 Ohio App.3d 409,411-412.
 {¶ 18} Civ.R. 56(C) provides:
 {¶ 19} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it *Page 8 
appears from the evidence or stipulation, and only [therefrom], that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 20} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 21} It is based upon this standard that we review AVC's assignments of error.
 I {¶ 22} In its First Assignment of Error, AVC contends the trial court erred by finding that an interpretation of the insurance policy, which provides coverage for the destroyed warehouse under the policy issued for 206 Cherry Avenue, would be an unreasonable interpretation. We disagree.
 {¶ 23} In Cooper Farms, Inc. v. Brown Brown of Ohio, Inc., Van Wert App. Nos. 15-06-02, 15-06-03, 2006-Ohio-5982, at ¶ 33-¶ 35, the Third District Court of Appeals *Page 9 
explained the rules of contract interpretation as applied to insurance policies. In doing so, the court stated:
 {¶ 24} "`It is well settled that the construction of written contracts, including contracts of insurance, is a matter of law.Alexander v. Buckeye Pipeline (Sic.) Co. (1978), 53 Ohio St.2d 241, at paragraph one of the syllabus; Leber v. Smith, 70 Ohio St.3d 548, 553,1994-Ohio-361 (citation omitted). Accordingly, interpretations of insurance contracts are likewise subject to a de novo standard of review. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm,73 Ohio St.3d 107, 108, 1995-Ohio-214. In so doing, "[c]ommon words * * * will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander, 53 Ohio St.2d 241, at paragraph two of the syllabus.'" Bunosky v. Metro. Property Cas. Ins. Co., 11th Dist. No. 2005-P-0073, 2006-Ohio-2768, at ¶ 12.
 {¶ 25} "`[W]here the provisions of an insurance policy are clear and unambiguous courts may not indulge themselves in enlarging the contract by implication in order to embrace an object distinct from that contemplated by the parties, Stickel v. Excess Ins. Co. (1939),136 Ohio St. 49, paragraph one of the syllabus, nor read into the contract a meaning not placed there by an act of the parties, Motorists Ins. Co. v.Tomanski (1970), 27 Ohio St.2d 222, 226; Olmstead v. Lumbermens Mutl.Ins. Co. (1970), 22 Ohio St.2d 212, 216, nor make a new contract for the parties where their unequivocal acts demonstrate an intention to the contrary, Jackson v. Metropolitan Life Ins. Co. (1973),34 Ohio St.2d 138, 140; Fidelity Cas. Co. v. Hartzell Bros. Co. (1924), *Page 10 109 Ohio St. 566.'" Gomolka v. State Auto. Mutl. Ins. Co. (1982),70 Ohio St.2d 166, 168.
 {¶ 26} "`Where, however, it may reasonably be concluded that the language of a policy is ambiguous and may therefore be subject to different interpretations, a universally applied axiom of construction becomes appropriate to resolve the ambiguity. As stated in Butche v.Ohio Cas. Ins. Co. (1962), 174 Ohio St. 144, 146: "[P]olicies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretations, will be construed most favorably for the insured.'"
 {¶ 27} In the case sub judice, the trial court determined the insurance contract was not ambiguous. Judgment Entry, Mar. 22, 2006, at 6. The trial court based its finding upon the following reasons. First, the trial court found AVC purchased the brick building and warehouse, in 1991, as a single purchase. Id. The total square footage of the building at 236 Walnut Avenue was 14,000 square feet. Id. AVC's President signed the application for insurance which listed the square footage for the building at 236 Walnut Avenue as 14,000 square feet. Id.
 {¶ 28} Second, the trial court noted that none of the prior policies, applications or insurance proposals listed the warehouse, attached to the brick building at 236 Walnut Avenue, as a separate location. Id. Third, the Supplemental Declarations and application for insurance signed by AVC's President describe the following four locations under the policy: (1 ) 236 Walnut Ave. NE (Location 1, Building 1); (2) 200-220 Cherry Ave. NE (Location 2, Building 1); (3) 1251 Harrison Ave. SW (Location 3, Building 1); and (4) 1253 Harrison Ave. SW (Location 4, Building 1). Id. A separate location is not described for the warehouse at 236 Walnut Avenue.
 {¶ 29} Fourth, the trial court referred to the policy language which clearly states that "covered property" includes buildings described in the Declarations and anything permanently attached. The policy provides:
 {¶ 30} "SECTION I — COVERAGES
 {¶ 31} BUILDING(S) — COVERAGE 1
 {¶ 32} "A. Covered Property
 {¶ 33} "Building(s) means buildings described in the `Declarations' and anything permanently attached."
 {¶ 34} The trial court noted the warehouse and brick building were attached at one corner and had a fire door between them. Id. at 7. Thus, the court concluded the warehouse attached to the 236 Walnut Avenue brick building is included in the policy under Location 1, Building 1. Id. at 7.
 {¶ 35} Fifth, the trial court cited Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, for the proposition that a court may only consider extrinsic evidence to ascertain the parties' intent when the contract is ambiguous. Although the President of AVC, Raymond Gonzalez, believed the contents of the warehouse were covered under the business personal property coverage for Location 2, Building 1, this was never represented to him. Id. Since the trial court found the contract was not ambiguous, it looked only to the plain and ordinary meaning of the language used in the policy and did not consider how the President of AVC interpreted the language of the contract. Id.
 {¶ 36} Finally, the trial court determined that the provision in the policy regarding coverage for damage to: "1. Personal property pertaining to your business * * *; 2. Personal property of others that is in your care, custody or control * * * while [1] in or on *Page 12 
the described buildings, or [2] in the open, or in a vehicle, on the premises described in the Declarations or within 1,500 feet thereof * * *", does not apply to provide coverage under the policy insuring Location2, Building 1 because the fire did not occur nor damage any property at the warehouse at 200-220 Cherry Ave. NE." Id. at 7-8. Thus, the trial court concluded AVC's argument that the Walnut Avenue warehouse is covered because it is within 1,500 feet of the Cherry Avenue warehouse is without merit. Id. at 8.
 {¶ 37} Despite these findings by the trial court, AVC disagrees with the trial court's conclusion that no ambiguities exist under the insurance policy. AVC maintains a jury question exists because there are contrary and reasonable interpretations of the policy at issue. Specifically, AVC argues coverage under supplemental declaration Location 2, for the warehouse, would not be an unreasonable interpretation of the policy for the following reasons.
 {¶ 38} First, AVC contends the fact that the brick building and warehouse were purchased as a single purchase has limited relevance as to coverage by subsequent insurance policies. Although Location 1 is described as 14,000 square feet, AVC also points to the fact that Location 1 is referred to as a two-story building built in 1910 and renovated in approximately 1970. Thus, AVC concludes that because the metal warehouse is not mentioned in this description, it is not part of Location 1. AVC argues the trial court selectively emphasized only the parts of the insurance application that supports its conclusion and ignored information in the application that suggests the warehouse is part of Location 2 for coverage purposes. *Page 13 
 {¶ 39} We have reviewed the policy at issue and find no language, in the policy, which suggests the warehouse is part of Location 2 for coverage purposes. The "DECLARATIONS" section of the policy provides that: "THE INSURANCE APPLIES TO THOSE PREMISES DESCRIBED AS PER THE ATTACHED SUPPLEMENTAL DECLARATIONS. THIS IS SUBJECT TO ALL APPLICABLE TERMS OF THE POLICY AND ATTACHED FORMS AND ENDORSEMENTS." The fact that 236 Walnut Avenue is described in the "occupancy/operations" section of the policy as "Printing/Silk Screening" does not mean that the warehouse, attached to the brick building at 236 Walnut Avenue and included in the property description of 14,000 square feet, is excluded from the coverage provided for Location 1.
 {¶ 40} There is no language in Erie's policy that suggests that the warehouse permanently attached to the brick building at 236 Walnut Avenue is instead covered by insurance provided for a building located two blocks away and described as Location 2. Although Erie's policy of insurance provides a description of "occupancy/operations" conducted at each of the four properties insured under the policy, the policy clearly references the properties in terms of addresses and locations and provides separate coverage limits for each address. Further, AVC, in its First Amended Complaint, refers to the destroyed warehouse as having a "Rex Avenue" location. However, Erie's policy makes no mention of insuring a "Rex Avenue" location even though it clearly describes the properties it insures by using addresses. There is also no evidence that AVC requested that Erie list the "Rex Avenue" warehouse as part of Location 2.
 {¶ 41} In fact, Glenn Silverhart, AVC's former Farmers' agent, testified that AVC reduced the amount of coverage on the warehouse at 236 Walnut Avenue, in 1998, *Page 14 
after AVC purchased the building on Cherry Avenue and transferred product and equipment from the Walnut Avenue location to the Cherry Avenue location. Depo. Glenn Silverhart at 77-82. AVC reduced the amount of coverage from $1,500,000 to $50,000. Id. Mr. Silverhart understood that after the purchase of the Cherry Avenue property, AVC used the warehouse on Walnut Avenue merely as manufacturing space and not warehouse space. Id. at 93-95. These actions by AVC are consistent with the manner in which the properties are described in Erie's policy of insurance. The Cherry Avenue property is described as "Printing — Warehouse/Storage" and the Walnut Avenue location is described as "Printing/Silk Screening."
 {¶ 42} Finally, AVC challenges the trial court's reliance on the "permanently attached" language found in the Declarations Section of the policy. According to this language, "covered property" includes buildings described in the Declarations and anything permanently attached. AVC argues this language is intended to include fixtures "permanently attached" to a building and does not refer to buildings which may be attached along one wall or partially attached at a corner. We find nothing in Erie's policy that limits this language to fixtures. Further, had Erie intended the "covered property" language to be limited to fixtures, it could have stated so in the policy language.
 {¶ 43} Accordingly, we conclude the trial court did not err when it determined coverage for the destroyed warehouse, under supplemental declaration Location 2, would be an unreasonable interpretation of Erie's insurance policy.
 {¶ 44} AVC's First Assignment of Error is overruled.
 II *Page 14 {¶ 45} In its Second Assignment of Error, AVC maintains the trial court erred when it concluded that its claim for loss of business income must fail because AVC's business was interrupted within the policy definition and such interruption continued when AVC could not replace the covered property due to Erie's failure to pay the full value of the contents claim. We disagree.
 {¶ 46} In its judgment entry, the trial court concluded that, "[s]ince the Court has found that the Plaintiff [AVC] is only entitled to the BUSINESS PERSONAL PROPERTY AND PERSONAL PROPERTY OF OTHERS coverage in the amount of $75,000, the Court finds that Plaintiffs claim for loss of business income based upon Defendant's `refusal to consider the full value of the loss sustained by and claimed by the plaintiff for the warehouse contents' is without merit." Judgment Entry, Mar. 22, 2006, at 10-11.
 {¶ 47} AVC contends that under the policy definition of additional income protection and of "interruption of business," the claimed loss income of $464,000 is owed to it by Erie. The "ADDITIONAL INCOME PROTECTION — COVERAGE 3" of Erie's policy provides "Additional Income Protection" and "Extra Expenses Coverage." Under the "Additional Income Protection Coverage," Erie agrees to "pay the actual loss of `income' sustained by you [AVC] up to the Occurrence Limit shown in the `Declarations.'" The policy defines "income" as:
 {¶ 48} "* * * [T]he sum of net profit and necessary continuing operating expenses incurred by the business such as payroll expenses, taxes, interests and rents. For manufacturing risks, `income' includes net sales value of production."
 {¶ 49} Erie's policy further provides that:
 {¶ 50} "The `income' loss sustained by you [AVC] shall not exceed:
 {¶ 51} "1. The actual reduction of `income', during the `interruption of business,' and
 {¶ 52} "2. The reduction in rents received less charges and expenses which do not necessarily continue during the `interruption of business.'"
 {¶ 53} Under the "Extra Expenses Coverage," Erie's policy provides:
 {¶ 54} "We [Erie] will pay necessary actual and necessary `extra expenses' (other than the expense to repair or replace property) sustained by you [AVC] to:
 {¶ 55} "1. Avoid or minimize the `interruption of business' and to continue your [AVC's] business operations:
 {¶ 56} "a. At the premises described in the `Declarations'; or
 {¶ 57} "b. At replacement premises or at temporary locations * * *.
 {¶ 58} "2. Minimize the `interruption of business' if you [AVC] cannot continue your [AVC] business operations to the extent it reduces the amount of loss that would have been payable under loss of `income.'"
 {¶ 59} "We [Erie] will not pay any `loss' or damage to your [AVC] buildings or business personal property and personal property of others. * * *"
 {¶ 60} In the case sub judice, Reboul Henderson, Inc. determined $129,167 was AVC's extra expense loss and calculated no business income loss because saved expenses exceeded the calculated lost sales. The trial court specifically noted that AVC did not provide it with any evidence which disputes the determination by Reboul Henderson, Inc. Thus, the trial court concluded and we agree, Erie was entitled to summary judgment on AVC's breach of contract claim. Erie paid the full amount of *Page 17 
coverage for Location 1, Building 1, and the full amount determined to be AVC's extra expense loss.
 {¶ 61} AVC's Second Assignment of Error is overruled.
 III {¶ 62} AVC maintains, in its Third Assignment of Error, the trial court erred when it determined that it should have presented expert testimony to establish the standard of care for its insurance agent, Appellee Lyons, when AVC's claim against Appellee Lyons was that he did not procure the amount of contents coverage for the warehouse requested by AVC and the parties each acknowledged, in their trial court briefs, that an insurance agent has the duty to use ordinary care to procure the coverage requested by the insured. We disagree.
 {¶ 63} In its judgment entry, the trial court granted summary judgment on AVC's negligence claim against Erie and Appellee Lyons concluding "[p]laintiff [AVC] has not provided any evidence from an expert that Defendant Lyons had a duty to inquire as to whether $75,000 in coverage was sufficient or whether any such duty was breached. Plaintiff [AVC] had until August 17, 2005 to identify an expert and produce an expert report. Plaintiff [AVC] has neither identified nor produced an expert report." Judgment Entry, Mar. 22, 2006, at 12.
 {¶ 64} AVC maintains the trial court incorrectly concluded that expert testimony was required. In a factually similar case, the Eighth District Court of Appeals explained the duty of an insurance agent in obtaining insurance requested by a customer and the necessity of expert testimony to establish the standard of care of an insurance agent. The court of appeals explained as follows:
 {¶ 65} "It is well established in Ohio that liability and negligence will not lie in the absence of a duty owed by the defendant. NielsenEnterprises, Inc. v. Insurance Unlimited Agency, Inc. (May 8, 1996), Franklin App. No. 85AP-781, unreported, 1986 Ohio App. LEXIS 6754, at 6, citing Gelbman v. Second Natl. Bank of Warren (1984), 9 Ohio St.3d 77,78, 458 N.E.2d 1262. In regard to the actions of an insurance agent, this court has held that an insurance agent has a duty to exercise good faith and reasonable diligence in obtaining insurance requested by a customer, and in advising the customer who relies on the agency's expertise. Lawson v. Ohio Casualty Ins. Co. (June 2, 1994), Cuyahoga App. No. 65336, unreported, 1994 Ohio App. LEXIS 2367, at 7, citingFirst Catholic Slovak Union v. Buckeye Union Ins. Co. (1986),27 Ohio App.3d 169, 499 N.E.2d 1303. This court has also found it necessary to establish the standard of care of an insurance agent through expert testimony; expert testimony is appropriate to establish the standard of care of an insurance agent. Lawson, supra 8, citing Frank W. Schaefer,Inc. v. C. Garfield Mitchell Agency, Inc. (1992), 82 Ohio App.3d 322,612 N.E.2d 442." MBE Collection, Inc. v. Westfield Companies, Inc. (Apr. 18, 2002), Cuyahoga App. No. 79585, at 2.
 {¶ 66} Thus, the court of appeals concluded, in the MBE Collection,Inc. case, that because plaintiff failed to include any form of evidence that would indicate the insurance agent breached the appropriate standard of care in support of its brief in opposition to the parties' motions for summary judgment, defendants were entitled to summary judgment. Id. at 3. In the case sub judice, AVC also did not submit any expert testimony regarding the standard of care nor any evidence that would establish Appellee Lyon breached the standard of care owed it. Accordingly, we conclude the *Page 19 
trial court properly granted summary judgment as to AVC's negligence claim against Appellee Lyons.
 {¶ 67} AVC's Third Assignment of Error is overruled.
 IV {¶ 68} In its Fourth Assignment of Error, AVC maintains the trial court erred when it denied its motion for partial summary judgment which requested the trial court to find the Erie insurance policy ambiguous concerning the coverage limit applicable to the warehouse contents and that the higher coverage limit provided by AVC's interpretation applied because the ambiguity must be resolved in favor of the insured. We disagree.
 {¶ 69} We determined in AVC's First Assignment of Error that Erie's insurance policy was not ambiguous regarding the coverage limit applicable to the warehouse. Therefore, having not found an ambiguity, we conclude the trial court properly determined AVC is only entitled to coverage in the amount of $75,000.
 {¶ 70} AVC's Fourth Assignment of Error is overruled.
 {¶ 71} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: Wise, P. J., Edwards, J., concurs.
 Hoffman, J., concurs separately. *Page 20